UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
AUG 2 4 2020
PRO SE OFFICE

JOSE R. LACEN -PLAINTIFF

-against-                              19-civ.5097(AT)

EMTC CAPTAIN AYGEMONG (CLINIC CAPTAIN)
JANET RUNCIE RPA C-76 CLINIC           AMENDED COMPLAINT
ACHIM HUGGINS M.D. C-76 CLINIC
DAVID ONUORA P.A.
SAI KOLLA M.D.

DEFENDANTS


LEGAL BASIS FOR CLAIM: VIOLATION OF MY FEDERAL CONSTITUTIONAL
                      RIGHTS.

PLAINTIFF INFORMATION
JOSE R. LACEN   DIN 20-A-0185 (210-18-00178, 241-18-04624
CLINTON CORR.FAC.
P.O. BOX 2001
DANAMORA N.Y. 12929

PRISONER STATUS
CONVICTED AND SENTENCED PRISONER

STATEMENT OF CLAIM
PLACE OF OCCURRENCE E.M.T.C.C-76
DATES OF OCCURRENCE 3-1-2018, to the present

FACTS:
 ON MARCH 1 2018, I WAS ADMITTED INTO D.O.C. C-76 ON A ONE YEAR
SENTENCE AND UPON ADMISSION I EXPLAIN TO THE MEDICAL STAFF OF A
SPINAL SURGERY THAT I HAD PERFORM ON SEPT. 15 2017, AT LINCON
HOSPITAL (SEE ATTACHMENT) AND CAN BE AFFORDED A PERMIT FOR AN
EXTRA MATTRESS, AT WHICH TIME I WAS TOLD THAT WAS A SICKCALL
ISSUE.

ON APRIL 8,2018 AND DATES AFTER I REPORTED TO SICK CALL EXPR-
ESSING PAIN TO MY LOWER BACK DUE TO THE SURGERY AND CAN I BE
AFFORDED AN ADEQUATE MATTRESS OR A PERMIT FOR AN EXTRA MATTRESS
BUT TO NO AVAIL.THEREAFTER I SPOKEN TO CAPT. AYGEMONG OF THE
POSSIBILITIES OF ACQUIRING A NEWOR THICKER MATTRESS AND HE
RESPONDED "AS LONG AS I"M IN HOUSING UNIT 9MAIN I WILL NOT BE
AFFORDED A NEWER MATTRESS, BUT TO GO TO SICKCALL AND ASK FOR
EXTRA BLANKETS PERMIT.

ON APRIL 8, 2018 I REPORTED BACK TO SICK CALL WHERE I WAS SEEN
BY DR. RUNCIE WHERE SHE PRESCRIBED LELOXICAM, AND ORDER A X-RAY
OF MY LOWER BACK. ON APRIL 17 2018 AN X-RAY WAS TAKEN AND SOON
AFTER I WAS SEENED BY DR. HUGGINS WHERE HE ASSESSED THAT IT
SHOWED MODERATE DEGENERATIVE ARTHRITIS, AND HE CONTINUED THE
MOLOXICAM BUT REFUSED TO GIVE ME THE PERMIT THAT WAS NEEDED.

ALTHOGH I WAS SEENED REGULARLY AND COMPLAINED OF OF TOTAL
DISCOMFORT AND PAIN BOTH DR RUNCIE AND DR HUGGINS CONTINUED TO
PRESCRIBE THE MELOXICAM AND PERMITS FOR EXTRA BLANKETS, WHICH
TO ANY DOCTOR THAT SEES THE PAIN ON A PERSONS FACE IT SHOWED
SOME TYPE OF PROBLEM, BUT ACCORDING TO THEM THERE WAS NOTHING
THEY CAN DO UNTIL I WAS SEENED BY AN NUEROLOGIST, WHICH ON JULY
12, 2018 I WAS SEENED AT THE SPECIALTY CLINIC, BY DR KOLLA,
AFTER HE PERFORMED NUMEROUS TEST TO MY LOWER EXTREMITIES IT WAS
DECIDED THAT THE RECORDS OF THE SURGERY WAS NEEDED SO HE CAN
DETERMINE WHAT COURSE TO TAKE, WHICH I SIGNED A CONSENT FOR HIM
TO OBTAIN THEM AND WAS GIVEN A FOLLOW UP APPOINTMENT FOR THREE
MONTHS. AND EVEN THOUGH HE NOTICED MY DISCOMFORT HE WILL NOT
ISSUEE ME THE PERMIT EITHER.

AFTER GOING BACK AND FORTH WITH THE DOCTORS I SOUGHT OUT THE
ADVICE OF ANOTHER DOCTOR WHERE I WAS SEENED BY DR. ONUORA AND HE
IN TURN STATED THAT "MEDICAL DOES NOT ISSUES PERMITES, AND TO
FOLLOW UP WITH D.O.C. WHICH PRODUCED PHONE CALLS OF THE AVAIL-
ABILTY OF A NEWER MATTRESS WHICH I BELIEVE WERE MADE TO APPEASE
ME.

IN AUGUST OF 2018, I WAS APPROACHED BY THE KEEP CONSULOR BY THE NAME OF DAVID, LAST NAME UNKNOWNED, AND WAS TOLD THAT MY REQUEST FOR THE MEDICAL RECORDS FROM LINCON HOSPITAL WERE NOT AVAILABLE, BUT AS YOU CAN SEE THE ATTACHMENT, A FAMILY MEMBER WITH MY CONSENT WENT TO LINCON HOSPITAL AND OBTAINED THE RECORDS WHICH I THEN WENT BACK TO SICK CALL AND PROVIDED THEM TO DR. HUGGINS WHICH HE STATED "THAT THEY DID NOT OBTAINED THEM THEY WERE NOT VALID". WHICH IS LUDRECRIS IN ITSELF WHERE THEY HAVE THE HOSPITALS LOGO AND TIME STAMP ON THEM. THAT IN ITSELF SHOWS THAT EVERY EFFORT THAT I TRIED IT WAS TO NO AVAIL, WHICH CLEARLY SHOWS HOW THERE MEDICAL WISDOM IS,

AS TO THE DUE PROCESS THAT WERE VIOLATED IT SHOWS THAT ANY PRISONER SHOULD NOT BE DENIED THE MEDICAL CARE THEY SEEK, BUT THESE DOCTORS JUST BLANTANTLY IGNORED NY PLEAS, AND WOULD RATHER THAT I CONTINUE ON MEDS THAN TO RELIEVE THE PROBLEM.

IF THE CORTS WILL SEE THAT EVERY MONTH I WAS ISSUED A PERMIT FOR WEARING SPECIAL SNEAKERS FOR MY DISCOMFORT BY EVERY DOCTOR I ENCOUNTER WITH THE EXCEPTION OF DR KOLLA, SO IT IS EASY TO SEE THAT THERE WAS A PROBLEM THAT THEY CHOSED TO IGNORE EVERY STEP OF THE WAY. OVER THE TIME THE PAIN WAS SO BAD THAT I HAD TO START USING A ASSISTANCE DEVICE WHICH WAS A CANE THAT THEY GAVE ME.

ONCE I WAS TRANSFERED OUT OF E.M.T.C. AND ARRIVED AT A.M.K.C. I INQUIRED OF GETTING A EXTRA MATTRESS ONE WAS FURNISHED WITH NO ISSUES WHAT SO EVER, BECAUSE IT WAS EVIDENT THAT I SUFFERED FROM BACK PROBLEMS, SO THEREFORE THEY WERE NOT INCLUDED IN THIS MATTER, BUT YES THEY DID WORK WITH ME WHICH SHOULD OF BEEN DONE BY THE DEFENDANTS BUT THEY CHOSED THEIR ROUTE.

INJURIES:

AS OF THIS FILING THE PAIN AND SUFFERING IS STILL THERE BUT DUE TO MY CURRENT ADDRESS MY NEEDS ARE BEING MET AND I:M CURRENTLY AM AWAITING TO HAVE A REASONABLE ACCOMUDATION PROVIDED.

RELIEF:

I HUMBLY REQUEST THAT A JUDGEMENT SHOULD BE ENTERED THAT CAN COMPENSATE FOR ANY FUTURE EARNINGS, WHICH ARE LIMITED AT THIS TIME DUE TO MEDICAL ISSUES, BUT I AM CLEAR FOR A SITTING POSITION JOB, WHICH IS ALL I CAN DO CAUSE OF MY PAIN.

CONCLUSSION:

CITING A BACKGROUND FROM JUDGE COLLEEN McMAHON, THAT TO STATE A CLAIM REGARDING THE MATTRESS AT RIKERS ISLAND ONE MUST ALLEDGE FACTS SHOWING THAT THERE WAS A PRE-EXISTING CONDITION REQUIRING A SPECIAL BED TO PROTECT AGAINST SERIOUS DAMAGE TO HIS FUTURE HEALTH, AND THAT HE MADE HIS CONDITION KNOWNED TO PRISON OFFICIALS AND FINALLY THAT A SPECIAL BED BE ACCOMMODATED AND HIS REQUEST WAS DENIED BY AN OFFICIAL WHO KNEW OF AND DISREGARDED AN EXCESSIVE RISK TO HIS HEALTH OR SAFETY WHICH ALL THE DEFENDANT DID,

DARNELL V PINEIRO STATES THAT THE CHALLENGED CONDITIONS WERE SUFFICIENTLY SERIOUS TO CONSTITUTE AN OBJECTIVE DEPRIVATION OF THE RIGHT TO DUE PROCESS, AND THAT EACH DEFENDANT ACTED INTENTIONALY TO IMPOSE THE ALLEGED CONDITION OR RECKLESSLY FAILED TO ACT WITH REASONABLE CARE TO MITIGATE THE RISK THAT THE CONDITION POSED TO THE PRETRIAL DETAINEE, WHICH AT THE TIME I WAS A SENTENCED PRISONER SO MY EIGHT AMMENDMETH WERE VIOLATED, AND WAS SUBJECT TO CRUEL AND UNUSUAL PUNISHMENT.

FURTHERMORE IN THE LIGHT MOST FAVORABLE TO A PROSE PLAINTIFF THE MOTION TO DISMISSED SHALL BE DENIED IN WHOLE AND THAT THE COURTS SHALL CONSIDER GRANTING MY REQUEST TO MOVE FORWARD

JOSE R. LACEN
PRO SE PLAINTIFF

DATED AUGUST 18 2020

*ATTACHMENT*

ORIGINALS

31 Aug 18   1135

Page 1 of 5

Lincoln Medical and Mental Health Center
Event Result Report
Operative Report

| Patient Name | Visit # | SMS Acct # | Location |
|---|---|---|---|
| Lacen, Jose | 735227-9 | 37157120 | |

ICD-10 Code    CPT4 Code    Description

Fri, 15 Sep 17 1855

31 Aug 18  1135                                                 Page 2  of 5
                    Lincoln Medical and Mental Health Center
                              Event Result Report
                                Operative Report

| Patient Name | Visit # | SMS Acct # | Location |
|---|---|---|---|
| Lacen,Jose | 735227-9 | 37157120 | |

Status: complete

Operative Report
    Attndg Surgeon   : Amed Rawanduzy, MD
    Dictated By      : Amed Rawanduzy, MD
    D/T Dictated     : Fri, 15 Sep 2017  1855
    Date Xcribed     : Mon, 18 Sep 2017
    Transcribed By   : J-C-W Lin Transcriptionist
    Report           :

LINCOLN MEDICAL AND MENTAL HEALTH CENTER

OPERATION REPORT

PATIENT:   LACEN, JOSE

MEDICAL RECORD NO:   735227

AGE: 47 YEAR-OLD    SEX: MALE    DATE OF OPERATION: 09/14/2017

PREOPERATIVE DIAGNOSIS:   MULTILEVEL LUMBAR SPONDYLOSIS, STENOSIS, DISK HERNIATION, DISK CALCIFICATION WITH RADICULOPATHY, L4-L5.

POSTOPERATIVE DIAGNOSIS:   MULTILEVEL LUMBAR SPONDYLOSIS, STENOSIS, DISK HERNIATION, DISK CALCIFICATION WITH RADICULOPATHY, L4-L5.

PROCEDURES:
1. BILATERAL HEMILAMINECTOMY, L4-L5.
2. MICRODISSECTION, MEDIAL FACETECTOMY AND FORAMINOTOMY, BILATERAL L4-L5.
3. PARTIAL VERTEBRECTOMY FACING DISK SPACE L4-L5 AND REMOVAL OF CALCIFIED DISK L4-L5, DECOMPRESSION OF THE DURAL SAC AND EXITING NERVE ROOTS BILATERALLY OF L5.

SURGEON:   AMED RAWANDUZY, M.D.
FIRST ASSISTANT:   MIRIAM LARKAI, PA

ANESTHESIA:   GENERAL.

ESTIMATE BLOOD LOSS:   30 CC.

COMPLICATIONS:   NONE.

SPECIMEN:   DISK MATERIAL OF L4-L5.

INDICATIONS:   Please see history and physical

31 Aug 18  1135                                              Page 3  of 5
                    Lincoln Medical and Mental Health Center
                              Event Result Report
                              Operative Report

<u>Patient Name</u>           <u>Visit #</u>        <u>SMS Acct #</u>              <u>Location</u>
Lacen,Jose              735227-9        37157120

Operative Report -- cont'd

exam for detail.  This patient is a 47-year-old man has some chronic back pain with pain progressively getting worse, radiating down the right lower extremity.  He had failed conservative management over years.  Imaging studies include an MRI of the lumbar spine that showed lumbar spondylosis at multiple levels with severe stenosis L4-L5 from degenerative changes and large calcified disk herniation mostly to the right side compression of the dural sac and the exiting nerve roots.  Surgical intervention in the terms of laminectomy, decompression and removal of the disks for decompressing the neural element was offered to the patient, and benefits and risks explained.

PROCEDURE:  Patient brought down to the operation room.  General anesthesia was administered.  An endotracheal tube was placed.  She was given 1 g of vancomycin intravenously.  The patient was then placed prone on Jackson table on Wilson frame, and lumbosacral region was thoroughly prepped and draped in a sterile fashion.  Fluoroscopic imaging was obtained to localize the level of L4-L5.  Skin incised in the midline with a 15-blade after infiltration with 1% Xylocaine and epinephrine, centered at L4-L5 level.  Dissection, thereafter, continued utilizing Bovie coagulation as well as sharp cutting and blunt dissection.  The paraspinal muscles were disinserted from the spinous processes of L4 and L5 as well as of the lamina and exposing the facet joints which were degenerated and hypertrophic.  Working with magnifying loupe initially, a part of the spinal process of L4-L5 then resected together with the epispinal and interspinous ligament.

With a power drill and various sizes of Kerrison rongeurs and curette, a partial hemilaminectomy of L4 and L5 was carried out.  The thick yellow ligament between the lamina then removed piecemeal.  Focusing mostly on the right side where decompression

31 Aug 18  1135                                              Page 4  of 5
                    Lincoln Medical and Mental Health Center
                              Event Result Report
                              Operative Report

| Patient Name | Visit # | SMS Acct # | Location |
|---|---|---|---|
| Lacen,Jose | 735227-9 | 37157120 | |

Operative Report -- cont'd

was maximum, additional decompression far laterally was carried out. The dural sac now exposed and the spinal canal was rather tight. The nerve root of L5 as well as the dural sac was flattened on the dome of a very large calcified disk right to the midline, but extending medially into the dural sac. At this juncture, the microscope was brought into the field, and the rest of the operation carried out under microscope. Gently, the L5 nerve root together with the dural sac was retracted medially with nerve root retractor, and the dome of the large disk was visualized. There was no soft tissue. It was entirely calcified like a thick eggshell, both the posterior longitudinal ligament and the annulus of the disk. That required mallet and osteotome to crack the dome of the calcified disk and expose the fibrotic, degenerated large disk herniation. Additionally, because of the overgrowth of the endplate facing the disk space of L4-L5, a partial resection of the osteophytes endplate that is the vertebrectomy facing the disk space at L4-L5 was necessary to decompress the dural sac and the nerve root. That was achieved again with osteotome and mallet. The disk space now exposed and remnant of fibrotic degenerated disk removed piecemeal. Decompression carried out to extend beyond the midline to enhance and make sure that the entire dural sac was thoroughly decompressed.

Attention now turned to the left side where the rest of the calcified posterior longitudinal ligament and the annulus of the disk was removed in similar fashion in addition to a partial vertebrectomy that was necessary to complete the decompression. At this juncture, a good decompression of the dural sac was achieved as well as the L5 nerve root bilaterally. The nerve roots were followed to the foraminal exit and bilateral foraminotomy further enhanced the nerve root's decompression. Bleeding from the epidural vein was easily controlled with

31 Aug 18  1135                                                   Page 5  of 5
                    Lincoln Medical and Mental Health Center
                              Event Result Report
                                Operative Report

Patient Name          Visit #          SMS Acct #              Location
Lacen,Jose            735227-9         37157120

Operative Report -- cont'd

    bipolar coagulation and placement of small hemostatic agent pieces of Oxycel.

    The wound was repeatedly irrigated with antibiotic solution, and closure of the wound started with 0 Vicryl for the paraspinal muscle and the fascia. The subcutaneous layer was closed with 2-0 Vicryl. Skin was closed with staples. About 8 cc of 0.5% local anesthesia Marcaine was injected in the paraspinal muscle and the subcutaneous tissue around the wound margin to reduce postoperative discomfort. A sterile dressing with bacitracin ointment applied to the surgical wound. Patient now turned to supine position on a stretcher where he was extubated and was found to be awake and moving lower extremities as before the operation. He was then taken to recovery room in stable condition.

    __X__ I was physically present for the entire procedure.

    _____
    AMED RAWANDUZY, M.D.

    DICTATED BY: AMED RAWANDUZY, M.D.

    D: 09/15/17    T: 09/18/17     AR/wkr
    00153924
    (18 Sep 17  1435)

---

Order Information

CASE # 19civ5097 (AT)(KNF)
DATE AUGUST 18 2020
RE: SUBMITTION OF AMENDED COMPLAINT
FROM: JOSE.R.LACEN PRO SE PLAINTIFF



RECEIVED
AUG 2 4 2020
PRO SE OFFICE

A.T.

PLEASE BE ADVISED THAT ACCESS TO OUR LAW LIBRARY ARE VERY LIMITED DUE TO THE CURRENT PANDEMIC, SO I HOPE THAT THIS SUBMISSION IS ACCEPTED AT THIS TIME, I REALIZED THAT THE TIMELINE WAS FAST APPROACHING AND I FIGURED THAT THIS IS BETTER THAN WAITING FOR A NEW COMPLAINT.

IM CURRENTLY SERVING A FIFTHTEEN YEAR SENTENCE AFTER A JURY TRAIL AND THE PAIN AND SUFFERING IS STILL CONSTANT THAT IT IS BEING REQUESTED THAT I BE MOVED TO A MEDICAL FACILITY, CAUSE OF THE DIFFECULTLY OF MY ACCESS TO GOING UP AND DOWN THE STAIRS HERE AT THIS FACILITY.

ACCESS TO MY CURRENT MEDICAL RECORDS ARE NOT AVAILABLE DUE TO THE PANDEMIC, AND THE AVAILABILITY TO BE SEENED BY THE MEDICAL STAFF, BUT AT THE APPRBIATE TIME I WILL BE SEENED BY OUTSIDE MEDICAL, AND ACCORDING TO MY LAST MEDICAL FOLLOW UP IT WAS ASSESSED THAT THE CONSTANT PAIN IT"S FROM THE SURGERY AND LACK OF CARE AT THE HANDS OF THE N.Y.C.D.O.C. AND ALTHOUGH CANES ARE NOT ALLOWED AT THIS FACILITY I STILL LABOR ON TO THE BEST OF MY ABILITIES.

THANK YOU FOR TAKING THE TIME OF YOUR BUSY DAY TO ADDRESS THIS MATTER.

*Jose Lacen*
JOSE R.LACEN
PRO SE PLAINTIFF

CLINTON CORR. FAC.
P.O.BOX 2001
DANAMORA NEW YORK 12929
DIN. 20A0185

(legal mail)

DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
**CLINTON CORRECTIONAL FACILITY**
P.O. BOX 2001
DANNEMORA, NEW YORK 12929

NAME: Lacen, Jose     DIN: 20-A-0185

Clinton ★ Correctional Facility

Pro Se Intake Unit
500 Pearl Street rm 200
New York N.Y. 10007

RECEIVED
AUG 24 2020
PRO SE OFFICE

US POSTAGE $000.65
08/19/2020
ZIP 12929
041M11272305